# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Natalie R. Laskey, Executrix of the Estate of Stephen Robert Laskey, | : | CASES CONSOLIDATED |
| Appellant | : | |
| | : | |
| v. | : | No. 919 C.D. 2021 |
| | : | |
| North Union Township, a second class municipality of the Commonwealth of Pennsylvania | : | |
| | : | |
| Natalie R. Laskey, Executrix of the Estate of Stephen Robert Laskey | : | |
| | : | |
| v. | : | No. 987 C.D. 2021 |
| | : | Submitted: February 17, 2023 |
| North Union Township, a second class municipality of the Commonwealth of Pennsylvania, | : | |
| Appellant | : | |

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, President Judge[1]
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER       FILED: May 16, 2024

Natalie R. Laskey, Executrix of the Estate of Stephen Robert Laskey (Laskey),[2] appeals from the Order of the Court of Common Pleas of Fayette County

---

[1] This matter was reassigned to this Judge on February 9, 2024.

[2] The original plaintiffs in this case when it was filed in 2011 were Stephen Robert Laskey and Steve's Restaurant Appliance and Food Preparation Equipment, his business. Mr. Laskey died in November 2018, and his estate, with his wife Natalie R. Laskey as Executrix, was substituted as the plaintiff. We reference Mr. Laskey and his estate interchangeably as "Laskey."

(trial court) that set aside a jury verdict in the amount of $75,000 in Laskey's favor in an assigned breach of contract action against North Union Township (Township) and awarded a new trial. The Township has filed a cross-appeal, challenging the trial court's conclusion that, had it not granted the Township's Post-Trial Motion, Laskey would be entitled to $25,000 of attorneys' fees awarded by the jury as consequential damages and prejudgment interest at the statutory rate of 6% on both the $25,000 in attorneys' fees and the remaining $50,000 of the verdict. Upon careful consideration, we reverse the trial court's Order setting aside the verdict and remand for the calculation of prejudgment interest.

## I.    BACKGROUND

This Court had occasion to describe the background in this matter in a decision addressing prior cross-appeals by the parties, which resulted in a remand to the trial court and the current appeal. *Laskey v. North Union Township* (Pa. Cmwlth., Nos. 1224, 1350 C.D. 2019, filed Nov. 9, 2020) (*Laskey I*).

> Laskey owns and operates an appliance repair business on a one-acre parcel located on Industrial Drive in Mount Braddock, Pennsylvania. Industrial Drive is adjacent to Ainsley Lane, a Township-owned road. The Township owns a five-acre parcel of land adjacent to Ainsley Lane . . . . Texas Eastern [Transmission, L.P. (Texas Eastern)] leases a property on Connellsville Road, also adjacent to Ainsley Lane, on which it operates a pipe yard for the storage and distribution of gas transmission pipelines.
>
> In May 2011, the Township entered into an agreement with Texas Eastern, wherein Texas Eastern paid $50,000 to the Township as payment "in full for damages sustained from Texas Eastern's use of Ainsley Lane, paving materials for Ainsley Lane[,] and installation of a storm drain in front of Stephen Laskey's property to address drainage issue." [(Reproduced Record (R.R.) at 507a.[3])] The Township and Texas Eastern also signed a document titled "Release" (2011 Release),

---

[3] For ease of review of this matter, we cite to the reproduced record filed in this appeal.

2

which stated that Texas Eastern's $50,000 payment was for the costs of grading and repaving Ainsley Lane and installing a storm drain. The 2011 Release further provided:

> [I]n consideration of the aforementioned and acknowledging the receipt of [$50,000,] *the Township releases and discharges Texas Eastern from and against any and all claims, demands, and causes of action, damages, either direct or consequential, costs, expenses (including, but not limited to attorneys' fees), losses and compensation of any kind in law or in equity of the demands and conditions from any and all claims, demands and causes of action that the Township or any third party has or may have associated with Ainsley Lane, the repair of Ainsley Lane, or Texas Eastern's use of Ainsley Lane.* The release is for the benefit of Texas Eastern and its successors and assigns and shall bind the Township and its successors and assigns.

[(*Id.* at 506a)] (emphasis added).

In May 2011, Laskey initiated this action by filing a writ of summons in the [t]rial [c]ourt. In November 2011, Laskey filed a Complaint against the Township and Texas Eastern, alleging damages caused by stormwater runoff and flooding on his property. Laskey averred that both defendants were negligent in developing and maintaining their properties, which caused excessive stormwater to flow onto Laskey's property since at least 2009. Laskey also averred that both defendants were negligent in maintaining Ainsley Lane, causing further damages to Laskey's property.

In April 2015, Texas Eastern filed a cross-claim for breach of contract against the Township. Texas Eastern alleged that the Township breached the terms of the 2011 Release by failing to perform any of the work specified in the agreement. Texas Eastern averred that, as of that date, the Township had not regraded or repaved Ainsley Lane, nor had it installed a storm drain to alleviate the drainage and stormwater runoff problems on Laskey's property.

In December 2017, Laskey settled [his] negligence claims against the Township with the Township's liability insurer, Selective Insurance Company, in the amount of $127,500. [(*See* R.R. at 282a, 407a, 443a, 453a.)]

3

Also in December 2017, Laskey settled [his] negligence claims against Texas Eastern for $38,000. [(R.R. at 595a-99a.)] As part of the settlement agreement, Texas Eastern and Laskey signed a "Release" (2017 Release) and an "Assignment of Claim" (2017 Assignment). The 2017 Release provided that Laskey

> [did] hereby release, remise, and forever discharge Texas Eastern . . . of and from any and all actions, causes of action, claims, demands, damages, costs, expenses, or any other recovery whatsoever . . . arising from alleged damage to [Laskey's] real and personal property . . . allegedly caused by multiple surface water run-off incidents . . . against [Texas Eastern], *including but not limited to all claims that were, or could have been, asserted in the civil action filed by* [*Laskey*] *in the* [*trial court*] . . . .

[(R.R. at 595a)] (emphasis added). The 2017 Assignment provided in pertinent part:

> *Texas Eastern . . . does hereby assign to Stephen Laskey . . . all* [*of Texas Eastern's*] *right, title, and interest in and to the cause of action against* [*the*] *Township . . . for* [*the*] *breach of contract arising out of that* [*2011 Release*]*, as set forth more fully in the cross-claim filed by* [*Texas Eastern*] *. . .* with full right to maintain the action[] and to settle and compromise the cause of action, and to give a release in [Texas Eastern's] name in full discharge of the liability under the cause of action.

[(R.R. at 504a)] (emphasis added).

In April 2019, Laskey and the Township proceeded to a jury trial on the only remaining cause of action: the breach of contract cross-claim that Texas Eastern had assigned to Laskey. At trial, both parties presented testimony and evidence regarding the 2011 Release between the Township and Texas Eastern, the 2017 Release and the 2017 Assignment between Texas Eastern and Laskey, and the attorneys' fees and costs Texas Eastern incurred in defending the Laskey negligence lawsuit.

On April 17, 2019, following a three-day trial, a jury returned a unanimous verdict in the amount of $75,000 in favor of Laskey and

against the Township. The jury specifically found that Laskey (as the assignee of Texas Eastern) proved the validity of the breach of contract claim between Texas Eastern and the Township by a preponderance of the evidence. The jury awarded Laskey: (1) $50,000 in monetary damages; and (2) $25,000 for attorneys' fees and costs incurred by Texas Eastern in defending the negligence lawsuit.[4]

On April 26, 2019, the Township filed a Post-Trial Motion seeking to set aside the jury's verdict. The Township averred, *inter alia*, that "the jury failed to follow the instructions of the [trial court] and clearly did not understand the legal complexity associated with the documents that were admitted as evidence." [(R.R. at 622a.)] On May 6, 2019, Laskey also filed a Post-Trial Motion, seeking an award of prejudgment interest (at a rate of 6% per annum) on the entire $75,000 verdict, totaling $17,940.15. [(R.R. at 635a.)] Both parties filed responses to each other's Post-Trial Motion.[]

*Laskey I*, slip op. at 2-6 (some alterations added).

Although a hearing on the Post-Trial Motions was scheduled, it was continued and, for reasons not relevant to this matter, was never held and the trial court did not rule on the motions. Laskey filed a Praecipe for Entry of Judgment on the Verdict, and the trial court entered judgment in Laskey's favor in the amount of $75,000. The Township filed a Notice of Appeal, and Laskey filed a cross-appeal. Following the parties' filing of Concise Statements of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa.R.A.P. 1925(b), the trial court issued a Statement in Lieu of Opinion (SILO) noting that the Township had raised 15 issues and Laskey raised only the issue of prejudgment interest.

In the SILO, the trial court explained as follows:

[Texas Eastern's] cross-claim[, which was assigned to Laskey,] was contractual, and the document involved was captioned and written as a "Release," which was drafted by Texas Eastern.

_____

[4] Laskey sought over $100,000 in attorneys' fees and costs. (R.R. at 411a.)

5

However, the "Release" was actually a poorly drafted "road maintenance agreement" under the provisions of the "Road Law"[5] and/or [T]he Second Class Township Code.[6] A Township of the Second Class can agree to waive the weight limit on a Township Road for an overweight carrier – usually coal mining companies or timber producers – in exchange for a Road Bond that secures the cost of repairing any damage to the Township Road caused by the overweight truck traffic. Ainsley Lane had a 10,000[-]pound weight limit because it was originally little more than a low-traffic drive[]way providing access to only five properties (including the ballfield and the Laskey Property on opposite corners at the beginning of [Ainsley] Lane, the [Ronald] Gallo property along [Ainsley] Lane, and the Texas Eastern property at the end of [Ainsley] Lane). The Texas Eastern pipe trucks, in contrast, weighed as much as 80,000 pounds, or even more. Both parties to the road maintenance agreement understood that such traffic had damaged and would continue to damage the road. In an effort to cooperate, the Township allowed Texas Eastern to use the road, and Texas Eastern used its own equipment to add additional "base" to the road, consisting of a layer or layers of stone. Notably, [T]he Second Class Township Code and/or the Road Law permits a Township to allow an overweight trucking operation to let a road deteriorate while in use, provided that the user provides financial security to rebuild the road when the overweight use ceases. Since Texas Eastern is such a large and profitable company, instead of posting a surety bond, it chose to simply pay the estimated cost of repair in advance.

(SILO at 3-4 (alterations added).) The trial court opined that "[t]he Township's mistake was in allowing Texas Eastern to draft the document captioned 'Release' . . . instead of captioning it and drafting it properly as a 'Road Maintenance Agreement.'" (*Id.* at 4.)

In the trial court's opinion, "it was inappropriate for Texas Eastern to attempt to assign its claim against [the] Township arising from the 2011 "Release," that it was inappropriate for Laskey to accept the assignment, and that all proceedings thereafter should have been nullified." (*Id.* at 9-10.) Yet, "the [trial court]

---

[5] It is unclear to what law the trial court was referring when it used "Road Law."
[6] Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§ 65101-68701.

6

struggle[d] to articulate exactly why the assignment was inappropriate and should be nullified." (*Id.* at 10.) Thereafter, the trial court stated: the assignment "changed 'the gist of the action'"; and "it [was] nonsensical for anyone to receive a refund of the money Texas Eastern paid to [the] Township for its destruction of and ongoing use of . . . 'Ainsley Lane,'" which "[t]he taxpayers of [the] Township have no reason to subsidize" those actions. (*Id.* at 10-11.) The trial court indicated that this assignment was "a good illustration of why" "champerty—sale of a lawsuit" "should still be prohibited." (*Id.*) It questioned "whether the attempted assignment of [the] non-assignable road maintenance agreement" nullified the settlement agreement between Laskey and Texas Eastern. (*Id.* at 11.) On the issue of the prejudgment interest request, the trial court indicated "an award of 6% simple interest prior to judgment is excessive and confiscatory" and it "would have awarded only the amount actually earned by the Township as interest in the intervening period." (*Id.*)

In their appeals to this Court in *Laskey I*, the parties argued the merits of their positions. We condensed the Township's issues as follows:

> (1) the [t]rial [c]ourt's rulings on counsels' objections during the video depositions of [Mr. Laskey, taken before he passed away,] and Texas Eastern's then-counsel . . . ; (2) the [t]rial [c]ourt's jury instructions regarding the computation of Texas Eastern's attorneys' fees; (3) the [t]rial [c]ourt's instructions regarding the interpretation and application of the 2011 Release, the 2017 Release, and the 2017 Assignment; and (4) the [t]rial [c]ourt's ruling on the Township's Motion for Directed Verdict.

*Laskey I*, slip op. at 10-11 n.4. However, we did not address the merits, including whether those issues had been preserved for appellate review, because the trial court had to rule on the Post-Trial Motions before judgment could be entered. We concluded that the exception to this rule set forth in Pennsylvania Rule of Civil

7

Procedure 227.4(b), Pa.R.Civ.P. 227.4(b), was inapplicable because Laskey's Praecipe for Entry of Judgment was filed before 120 days had passed since he filed his Post-Trial Motion. *Laskey I*, slip op. at 11. Accordingly, we held the trial court had erred in reducing the verdict to a judgment, and we vacated the judgment and remanded for a hearing on the issue of prejudgment interest and rulings on the Post-Trial Motions. *Id.* at 12-13.

## II. RESOLUTION OF THE POST-TRIAL MOTIONS

On remand, the trial court held a hearing and argument on the Post-Trial Motions on December 15, 2020, and, although neither party presented witnesses, both submitted multiple memoranda and motions. Laskey argued he was entitled to prejudgment interest at 6% as of right on the $50,000, and, within the trial court's discretion, interest on the $25,000, which were awarded as consequential damages. (R.R. at 805a-12a (citing *Cresci Constr. Servs., Inc. v. Martin*, 64 A.3d 254 (Pa. Super. 2013)[7]).) The Township responded it had invested the $50,000 in a particular capital improvement account that earned an interest rate far less than 6% but did not present any evidence to support that claim, despite having an opportunity to do so and the trial court's expectation that it would do so. (*Id.* at 813a-16a.) The Township contended the award of prejudgment interest was entirely within the trial court's discretion and that the facts and circumstances in this case did not warrant the imposition of prejudgment interest. (*Id.* at 817a-22a (citing *Cresci Constr.*).)

The parties provided argument regarding the four issues summarized in *Laskey I*. Laskey argued the asserted issues were waived because, respectively: the

---

[7] "In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

Township did not object and, in fact, agreed, to the procedure for the replaying of the video deposition; the Township did not present any proposed points of charge and did not object or raise exceptions to any of the trial court's instructions to the jury at the time; and the Township sought a non-suit but never moved for a directed verdict. (R.R. at 803a-04a, 859a-62a.) Laskey further argued the issue of the 2011 Release being a "Road Maintenance Bond" was not one raised by the Township in its pleadings or at trial, but by the trial court in its questioning of Township Supervisor Curtis Matthews. (*Id.* at 838a-39a, 845a-47a.) Further, Laskey asserted, factually, the Release could not be a Road Maintenance Bond Agreement, given the 2011 Release's language, Matthews' testimony that he was aware of such agreements but disclaimed that the release was intended to be that kind of agreement, and Ainsley Lane was not a road designated by a Township ordinance as having the necessary weight limit to impose a road bond. (*Id.* at 837a-39a, 842a-43a, 848a-50a.) Similarly, Laskey maintained the Township never raised or pled the affirmative defense of champerty and, therefore, that issue was not preserved. (*Id.* at 850a-51a.) Even if it had been raised, Laskey argued the 2011 Assignment did not meet the requirements of champerty. (*Id.* at 851a-52a.)

The Township acknowledged that "champerty was not raised in terms of that magic word," but it had argued that the assignment was improper and illegal, and asserted that the assignment was clearly champertous. (*Id.* at 823a-24a.) It argued the trial court should have allowed the jury to hear the objections and rulings on the objections in the video depositions because, otherwise, the jury "had no idea what was going on" in the video, it was "sorry [it] didn't make that objection on the record", and it "should have objected" to the procedure at the trial but did raise the issue in its Post-Trial Motion. (*Id.* at 830a.) According to the Township, it had filed

9

a Motion to Dismiss or compulsory non-suit at the close of Laskey's case, which was not decided, and that it "believe[d] at the end of the case, there was a Motion for a Directed Verdict . . . that was not handled." (*Id.* at 831a.) It further contended the jury verdict was inconsistent and against the weight of the credible evidence and inconsistent with the trial court's charge. (*Id.*) The Township acknowledged it did not file any exceptions to the trial court's jury instructions. (*Id.* at 836a.) Finally, the Township argued why the 2011 Release was not a contract, as interpreted by the jury under the trial court's instructions, including that the word "contract" did not appear anywhere in the document. (*Id.* at 864a-65a.)

During argument, the trial court agreed that a road with no weight limit could not be bonded but noted that, notwithstanding ordinances to the contrary that Laskey presented at the argument, Matthews testified at trial that all Township roads were 10-ton roads. (*Id.* at 842a-44a.) The trial court also explained why the 2011 Release, in its view, was an unassignable Road Maintenance Agreement and, to the extent it could be assigned, the obligation to fix Ainsley Lane followed the $50,000, a position Laskey disagreed with because that obligation was always on the Township. (*Id.* at 825a-26a, 847a-48a, 853a-54a.) The trial court also indicated its belief that, in assigning the claim to Laskey, Texas Eastern "ha[d] disavowed the [2011] Release," that the agreement was now void, this was something the Township would have to separately litigate, and the proper remedy was rescission, which had not been included in the jury charge. (*Id.* at 828a, 854a-55a.) Laskey observed that rescission was never pled or argued at the trial. (*Id.* at 855a-56a.) On this point, the trial court stated,

> [i]n fairness, I charged the [j]ury whether counsel made appropriate, timely objections to the way I charged them. [Laskey] may or may not have waived [his] objection to it, I don't know. [The Township] may

10

or may not have waived [its] objections to my charge to the [j]ury. But I have independently come to the conclusion that the [j]ury was not properly instructed.

(*Id.* at 857a-58a.) The trial court further stated the 2011 Release was a contract and, in the trial court's view, the argument that the release was a Road Maintenance Agreement and Bond was the Township's "best position." (*Id.* at 865a.) Although the trial court was "a little troubled that it look[ed] like [it] brought up the subject of [the 2011 Release] being a Road Maintenance Agreement[,] . . . [it] d[id not] know what else" the 2011 Release was. (*Id.* at 865a-66a.) The Township stated that "[t]he [trial c]ourt [was] entitled to that opinion and there [was a] reasonable basis for that to be considered." (*Id.* at 866a.)

Following argument, and after the time the trial court gave to the Township to explain its lack of evidence on the prejudgment interest issue and to produce ordinances that designated Ainsley Lane as having a 10-ton weight limit had expired, the trial court issued its Opinion and Order. On the issue of prejudgment interest, the trial court concluded that

> [g]iven the Township's unexcused failure to present evidence when it had an opportunity to do so, th[e trial c]ourt concludes that[] if the jury verdict [is] permitted to stand, [Laskey] would be entitled to recover interest at the legal rate of 6% simple interest on the $50,000[] that Texas Eastern paid to the Township from the date of deposit until the date of judgment. Interest on the attorney fees award is complicated by the fact that the . . . fees were accrued over time, and were not awarded in full. However, interest would be payable on the last $25,000[] accrued, from the date that Texas Eastern paid each installment toward that $25,000[] (as we must assume that the last $25,000[] billed is the $25,000[] that the jury awarded).

11

(Opinion and Order at 2.) However, the trial court concluded "that neither interest amount is recoverable at this time, based on [its] disposition of the other Post-Trial Motions." (*Id.*)

As to the issues relating to the video depositions and instructions related to the award of attorneys' fees, the trial court found that the Township had waived any such challenge. (*Id.* at 3.) However, the trial court found the issues related to the "jury instructions concerning the interpretation and application of the" various documents in this matter, and its ruling on the Township's Motion for Directed Verdict, were "meritorious." (*Id.*)

According to the trial court, its "instructions did not properly set forth the correct remedies or damages that could be awarded for a breach of the '2011 Release[]'" as that document could not "be properly interpreted without considering the Township's statutory authority" to require road repair bonds under Section 4902 of the Vehicle Code, 75 Pa.C.S. § 4902. (*Id.*) In the trial court's view, "[t]he jury should not have been permitted to treat the 2011 Release as an ordinary contract without" knowing that context, "even if the Township did not actually exercise that authority in accordance with the technical requirements of the statute." (*Id.*) The trial court found that Matthews and Texas Eastern's representative "were acting under a mutual mistake of fact, in that both believed that there was an enforceable weight-limit on Ainsley Lane at the time the 2011 Release was signed." (*Id.*) The trial court acknowledged that Laskey had proven there was no 10-ton weight limit on Ainsley Lane, but concluded that the 2011 Release had to be a Road Maintenance Agreement based on a mutual mistake of fact because there would otherwise be "no reason whatsoever for Texas Eastern to give the Township $50,000[] for repairs to

12

Ainsley Lane if Texas Eastern did not believe it had a legal obligation" to do so. (*Id.* at 5.)

The trial court acknowledged that "[t]he jury [had] clearly found that the Township had breached the terms of the '2011 Release[]'" and that the only issue was whether the proper instructions as to remedies were provided. (*Id.* at 6.) Observing that the Township, in its Post-Trial Motion, argued that the only remedies available would be for specific performance, or, if a financial remedy was required, Laskey could only recover the portion of the payment related to installing the drainage and grate on his property, the trial court held that it erred in providing instructions that allowed the jury to "rescind" the 2011 Release. (*Id.* at 7-8.) Setting forth concerns regarding what a payment of the funds would require the recipient to do under the 2011 Release, i.e., repair Ainsley Lane and install drainage, and the settlement monies Laskey had already received, the trial court held that

> "rescission" [wa]s not [the] proper remedy. The [i]nstructions given to the jury allowed them [sic] to enter a legally impermissible verdict. Regardless of the instructions requested by either party, it is ultimately the [c]ourt that is responsible for properly instructing the jury. Th[e] [c]ourt is persuaded that the $50,000 verdict they [sic] reached **based on those incorrect instructions** must be set aside. Since the verdict for attorney[s'] fees was based on the above impermissible award, that aspect of the verdict must be set aside as well.

(*Id.* at 8 (emphasis added).) The trial court further held the 2011 Release could not "be assigned without also transferring the obligation to repair/maintain the road and associated drainage features," which "cannot be transferred." (*Id.* at 9.) Thus, because "the verdict awarded an impermissible measure of damages," the trial court "SET ASIDE and voided" the verdict. (*Id.* (emphasis in the original).) Additionally, the trial court stated that since it "ha[d] now granted the Township's [m]otion to void

13

the verdict, there [wa]s no verdict to award interest on at this time, so the Post-Trial Motion for pre[]judgment interest [wa]s DENIED." (*Id.* (emphasis in the original).) The trial court then directed that any amendments to the parties' pleadings had to be completed within 45 days, that the parties' "pretrial statements setting forth the proper measure of damages or remedies then sought [were] to be filed within [30] days after the pleadings if there [were] no motions then pending," and that it would then schedule a new pretrial conference thereafter. (*Id.*)

Laskey appealed to this Court, followed by the Township's filing of a cross-appeal. The trial court directed each to file a Pa.R.A.P. 1925(b) Statement, which they did, to which the trial court issued a statement indicating it was relying on its prior Opinion and Order.

## III.   PARTIES' ARGUMENTS

### A.  *Laskey*

On appeal, Laskey argues the trial court's Order setting aside the jury's verdict and awarding a new trial in this matter should be reversed, the jury's verdict should be reinstated, and the trial court properly awarded prejudgment interest on the entire $75,000 verdict. Laskey maintains the trial court erred in finding merit in two issues from the Township's Post-Trial Motion. In particular, Laskey argues the Township failed to plead as new matter or argue that the 2011 Release was a Road Maintenance Agreement or that such agreement would be unassignable; rather, that position was raised by the trial court, which the court acknowledged during the argument on the Post-Trial Motions. Laskey further maintains that the Township did not provide points of charge and admitted that it had not asserted any objection or exception to the trial court's jury instructions, including those relating to how to interpret the documents at issue. Where no objection to jury instructions is made, Laskey asserts,

14

any challenge to those instructions is not preserved for appellate review under the well-settled principles of *Dilliplaine v. Lehigh Valley Trust Co.*, 322 A.2d 114, 116 (Pa. 1974), and its progeny.

Laskey also maintains the Township made no Motion for Directed Verdict and has never asked for a new trial, thereby failing to preserve any entitlement to that relief and, even if it had, the standard for granting such relief was not met. Laskey argues the jury instructions were not erroneous; the evidence showed that the 2011 Release was not intended by the parties to be, nor could it be, a Road Maintenance Agreement; there was no mutual mistake of fact relating to the 2011 Release – a defense not raised by the Township in its New Matter or otherwise argued at any point; and the trial court, not the Township, raised the issues of rescission and nullification post-trial. As the reasons for granting the Township's Post-Trial Motion were erroneous, Laskey contends the trial court erred in denying Laskey's Post-Trial Motion for prejudgment interest at the rate of 6% on the entire $75,000, which the trial court indicated it would have otherwise awarded.

### B. The Township

The Township asserts there was no error in the trial court setting aside the jury's verdict and awarding a new trial.[8] However, the Township also, confusingly, states that the trial court's Order "did not establish a new trial but simply corrected legal errors . . . that resulted in the unlawful, illegal, and improper jury verdict."[9] (The Township's Brief (Br.) at 18.) The Township, nevertheless, takes issue with

---

[8] The Township's brief is difficult to follow as its Argument section lacks headings to differentiate between the issues and the arguments on the issues are intermingled.

[9] To the extent the Township appears to suggest that a new trial was not ordered, it is apparent the trial court did so when it advised the parties to file "pretrial statements" and that a pretrial conference would be scheduled, (Opinion and Order at 9).

15

some of the trial court's jury instructions, which allowed the jury to consider the validity of the 2011 Release, its assignment, and the related claim for attorneys' fees, despite the fact that the 2011 Release was just that – a release, not a contract, and the assignment of the 2011 Release and the attorneys' fees claim were illegally champertous. These instructions, the Township argues, did not allow the jury to appreciate that awarding relief to Laskey would rescind the 2011 Release. It also argues the trial court failed to provide adequate jury instructions on contract issues. The Township maintains the trial court never decided the issue of a compulsory non-suit or a directed verdict, for which the Township asserts it moved at the close of trial. Additionally, the Township argues the assignment is now invalid as it was assigned to Mr. Laskey, individually, and to his business, not to his heirs, successors, and assigns, and did not assign all of the causes of action that would include attorneys' fees and interest. The Township asserts the jury should not have considered the attorneys' fees claim because Laskey failed to establish the 10 criteria for such fees under Section 2503 of the Judicial Code, 42 Pa.C.S. § 2503. The Township contends that the jury's verdict was properly set aside because the verdict was against the weight of the evidence. Finally, the Township argues there was no error in the trial court not awarding Laskey prejudgment interest because Laskey "failed to establish that the jury award represented a liquidated or ascertainable amount owed under the terms of the [2011] Release, as a matter of right[.]" (The Township's Br. at 19 (citing *Cresci Constr.*, 64 A.3d 254).)

### C. Laskey's Reply

Laskey reiterates that many of the Township's arguments are waived based on its failure to preserve them in its pleadings, at trial, and/or in its Post-Trial Motion.

16

Laskey observes the Township did not, as it claims in its brief, move for directed verdict at the close of the case or include such claim in its Post-Trial Motion, and, in any event, that relief was not granted by the trial court, which granted a new trial. Laskey argues that the $25,000 in attorneys' fees were properly awarded by the jury as consequential damages of the Township's breach, not as taxable costs pursuant to Section 2503 of the Judicial Code, as the Township now asserts. As to the Township's arguments in its cross-appeal relating to the trial court's instructions, champerty, and the jury's verdict being against the weight of the evidence, Laskey asserts these arguments are waived and/or not preserved for appellate review and are otherwise without merit.

## IV. DISCUSSION

Our review of a trial court order resolving motions for post-trial relief is limited to determining whether the trial court erred as a matter of law or committed an abuse of discretion. *Burke v. Buck Hotel, Inc.*, 742 A.2d 239, 242 n.1 (Pa. Cmwlth. 1999). In matters where a new trial is ordered and the "trial court specifies the reasons for which it ordered a new trial, [] an appellate court can only affirm the decision if at least one of the reasons specified is an adequate one." *Coker v. S.M. Flickinger Co., Inc.*, 625 A.2d 1181, 1187 (Pa. 1993). Our "inquiry is strictly directed at determining whether the trial court's stated reasons and factual basis can be supported," and if they cannot be supported, the trial court abused its discretion. *Id.* Of note, the bases given by the trial court must have been timely objected to by the complaining party and the ruling had to be prejudicial to that party. *Id.*

In setting aside the jury's verdict in this matter, denying Laskey's Post-Trial Motion for prejudgment interest on the $75,000 jury verdict, and ordering a new trial, the trial court reasoned that its jury instructions regarding the interpretation of

the 2011 Release as being something other than a Road Maintenance Agreement allowed the jury to reach an improper or illegal verdict, and that its jury instructions regarding the remedies available for that breach of contract, if found to have occurred, were erroneous. Laskey asserts these issues were not raised or preserved by the Township before trial, during trial, prior to the jury receiving instructions, or at the time the jury was being charged in this matter. We agree.

It is long settled that to preserve a challenge to a trial court's jury instructions, a timely, specific objection or exception must be made at the time the instructions are given. *Dilliplaine*, 322 A.2d at 116-17. *See also Jones v. Ott*, 191 A.3d 782, 788-89 (Pa. 2018); *Burke*, 742 A.2d at 243-44; *Fillmore v. Hill*, 665 A.2d 514, 515-16 (Pa. Super. 1995). As our Supreme Court has explained,

> [r]equiring a timely specific objection to be taken in the trial court will ensure that the trial judge has a chance to correct alleged trial errors. This opportunity to correct alleged errors at trial advances the orderly and efficient use of our judicial resources. First, appellate courts will not be required to expend time and energy reviewing points on which no trial ruling has been made. Second, the trial court may promptly correct the asserted error. With the issue properly presented, the trial court is more likely to reach a satisfactory result, thus obviating the need for appellate review on this issue. Or if a new trial is necessary, it may be granted by the trial court without subjecting both litigants and the courts to the expense and delay inherent in appellate review. Third, appellate courts will be free to more expeditiously dispose of the issues properly preserved for appeal.[] Finally, the exception requirement will remove the advantage formerly enjoyed by the unprepared trial lawyer who looked to the appellate court to compensate for his trial omissions.[]

*Dilliplaine*, 322 A.2d at 116-17 (footnotes omitted). A specific objection at trial is not necessary where a party submits points of charge to a trial court, those points of charge are rejected by the court, and the party alleges on appeal that the trial court abused its discretion in not giving those points of charge. *Burke*, 742 A.2d at 243.

18

Additionally, the rejection of the proposed point of charge must be in the record and that ruling must be challenged in the party's post-trial motions. *Jones*, 191 A.3d at 788-89.

It is undisputed that the Township did not object or raise any exceptions to any of the trial court's jury instructions, stating at trial that it had no "additions or corrections to the [trial c]ourt's instructions" to the jury. (R.R. at 494a.) Indeed, the Township expressly acknowledged at the argument on the Post-Trial Motions that it had not filed any exceptions to the jury instructions. (*Id.* at 864a-65a.) Nor did the Township submit specific points of charge to the trial court for consideration.[10] Thus, the Township did not preserve any challenge to those instructions as being erroneous for post-trial and appellate consideration. *Dilliplaine*, 322 A.2d at 116-17. Notably, although the trial court applied these preservation principles to hold that the Township had waived any objection to its jury instructions on the computation of attorneys' fees or to the procedure for showing the video depositions, (Opinion and Order at 3), the trial court did not apply those same principles to these other unobjected-to jury instructions. Therefore, it abused its discretion in granting

---

[10] Moreover, as Laskey asserts, the record reflects that at no point did the Township assert that the 2011 Release was an unassignable Road Maintenance Agreement, the basis of the trial court's conclusion that its instructions were in error. In fact, Matthews appeared to disclaim such position by testifying that the 2011 Release was to allow Texas Eastern to continue its operations on Ainsley Lane "without having to have it bonded or maintenance agreements or anything." (*Id.* at 435a-36a.) The trial court also sua sponte raised other issues, including the defense of mutual mistake. There can be no question that a trial court should not "act as the defendant's advocate" by sua sponte advancing positions not raised thereby. *Yount v. Pa. Dep't of Corr.*, 966 A.2d 1115, 1119 (Pa. 2009); *Battiste v. Borough of East McKeesport*, 94 A.3d 418, 423 n.7 (Pa. Cmwlth. 2014); *Commonwealth v. Pena*, 31 A.3d 704, 708 (Pa. Super. 2011). Affirmative defenses must be raised by defendants as new matter, those defenses are waived if not pled, and a trial court cannot raise such issues sua sponte. *Cabell v. City of Hazleton*, 506 A.2d 1001, 1003-04 (Pa. Cmwlth. 1986) (citing Pennsylvania Rule of Civil Procedure 1030, Pa.R.Civ.P. 1030, requiring all affirmative defenses to be raised as new matter).

the Township's Post-Trial Motion, setting aside the jury's verdict, and granting a new trial on these bases. *Dilliplaine*, 322 A.2d at 116-17; *Jones*, 191 A.3d at 788-89; *Coker*, 625 A.2d at 1187; *Burke*, 742 A.2d at 243-44; *Fillmore*, 665 A.2d at 515-16.

We now turn to the Township's arguments. The Township asserts that the trial court's jury instructions were inadequate and/or erroneous because they allowed the jury to consider the validity of the 2011 Release, its assignment, and claim for attorneys' fees even though the 2011 Release was not a contract, Laskey did not meet the 10 criteria for the award of fees under Section 2503 of the Judicial Code, the assignment of the 2011 Release was illegal champerty, and the remedy awarded would result in rescission of the 2011 Release. However, the Township did not object to **any** of the trial court's jury instructions or otherwise preserve objections to those instructions and, therefore, its arguments that the jury instructions were erroneous or inadequate cannot be considered. *Dilliplaine*, 322 A.2d at 116-17; *Jones*, 191 A.3d at 788-89; *Burke*, 742 A.2d at 243-44; *Fillmore*, 665 A.2d at 515-16.

Further, the record confirms that the Township did not raise the defense of champerty or the failure to comply with Section 2503's requirements in its pleadings, at trial, or in its Post-Trial Motion. Instead, the Township first raised the defense of champerty in its December 2020 Supplemental Memorandum in Support of Post-Trial Motion, filed a year after the trial court's December 2019 SILO, in which the trial court questioned the assignment as being champerty. (R.R. at 698a-700a; SILO at 10-11.) Although the Township asserted at the argument on the Post-Trial Motions that it may not have used the "magic word" champerty prior to that point, but had argued that concept, (R.R. at 823a), it makes no such argument before

20

the Court now and points to no place in the record where it did so prior to the SILO. Further, our review of the record indicates that while the Township stated that the assignment was "illegal" and "legally impermissible" in its answers and new matter, or that Laskey had not shown that the assignment was "valid" during the trial, (R.R. at 116a-17a, 133a), the Township provided little explanation as to why this was the case and made no arguments as to the elements of champerty,[11] and that the defense was not presented to the jury. Similarly, the Township's initial reference to Section 2503 as precluding an award of attorneys' fees was in its response to Laskey's Post-Trial Motion for prejudgment interest.[12] (*Id.* at 658a.) Nor did the Township assert, at trial or in its Post-Trial Motion, that the assignment of the 2011 Release could not survive Mr. Laskey's death. Not raising these issues at trial and in the Post-Trial Motion results in them not being preserved for appellate review. *Siegfried v. Borough of Wilson*, 695 A.2d 892, 894 (Pa. Cmwlth. 1997) (holding that in order to preserve an issue for appellate review, they must be raised at trial **and** included in a timely filed written motion for post-trial relief); Pa.R.Civ.P. 227.1(b) (providing post-trial relief cannot be granted unless the grounds therefore were raised in pre-trial proceedings or at trial and are specified in the motion).

As to the Township's reference to the trial court not resolving the Township's Motions for Compulsory Nonsuit or a Directed Verdict, nothing in the record reflects that the Township requested a directed verdict; thus, the trial court's failure to resolve such motion is of no moment. The Township did move for a compulsory

---

[11] The party asserting champerty must establish that "the party involved . . . [is] one who has no legitimate interest in the suit," that "the party must expend his own money in prosecuting the suit," and that "the party must be entitled by the bargain to a share in the proceeds of the suit." *Clark v. Cambria Cnty. Bd. of Assessment Appeals*, 747 A.2d 1242, 1245 (Pa. Cmwlth. 2000).

[12] Laskey was seeking the award of attorneys' fees as consequential damages under the terms of the 2011 Release, not pursuant to Section 2503, making the relevance of that statutory provision questionable.

21

nonsuit at the close of Laskey's case, and the trial court deferred ruling on that motion. However, while the Township mentions the fact of the trial court's deferment of its decision several times in its brief, it does not explain how or why the trial court erred in not resolving that motion in the Township's favor. (The Township's Br. at 6, 10-12.) Confusingly, paragraph 6 of the Township's "Counter Statement of Questions Involved" suggests that the trial court did **not** err in granting a new trial based on its "**denial** of [the Township's] Motion for a Compulsory Non[s]uit at the close of [Laskey's] case." (The Township's Br. at 6 (emphasis added).) Thus, the Township conflictingly seems to assert that the trial court deferred ruling on the Motion for Compulsory Nonsuit and did **not** rule on it and that the trial court **denied** that motion. Accordingly, the Court is left without a clear position or argument by the Township on this issue, and we will not address it further. *See Beaver Valley Slag, Inc. v. Marchionda*, 247 A.3d 1212, 1221 (Pa. Cmwlth. 2021) ("Because [the party] did not properly develop its . . . argument, the Court will not address it separately.").

The Township, in a single sentence and without citation to any legal authority, asserts that the jury's verdict was against the weight of the credible evidence. (The Township's Br. at 18.) The Township raised this issue in its Post-Trial Motion, stating that the verdict was "against and inconsistent with the **creditable** testimony and **creditable** evidence of the case." (R.R. at 622a (emphasis added).)

However, "[t]he factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Samuel-Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1, 39 (Pa. 2011). In evidentiary weight challenges, the evidence must be viewed in the light most favorable to the verdict winner, who is given the benefit of every reasonable inference from the evidence and rejecting any

22

unfavorable testimony and inferences. *Youst v. Keck's Food Serv., Inc.*, 94 A.3d 1057, 1071 (Pa. Super. 2014) (citation omitted). Courts are not to substitute their judgment regarding the credibility and evidentiary weight for that of the factfinder, and only if the "verdict is 'so opposed to the demonstrative facts that looking at the verdict, the mind stands baffled, the intellect searches in vain for a cause and effect, and reason rebels against the bizarre and erratic conclusion, [] can [it] be said that the verdict is shocking'" and against the weight of the evidence. *Haan v. Wells*, 103 A.3d 60, 69-70 (Pa. Super. 2014) (citation omitted).

The trial court did not expressly rule on this issue; however, it implicitly rejected it by concluding that the jury found that the Township breached the 2011 Release and that the outstanding issue of the "proper measure of damages or remedies" for that breach would be addressed at the new trial. (Opinion and Order at 6, 9.) The trial court did not abuse its discretion or commit an error in rejecting that claim because the Township did not, and does not, argue that the jury's verdict met the very high standard for a determination that the verdict was against the weight of the evidence. Rather, the Township maintains only that the "creditable" evidence did not support the verdict. (R.R. at 622a (emphasis added); the Township's Br. at 18.) Because the Township's argument is based on what **it** viewed as the **creditable** evidence, i.e., viewing the record in the light most favorable to the Township, which is contrary to the standard of reviewing the record and credibility determinations in evidentiary weight challenges, *Haan*, 103 A.3d at 69-70; *Youst*, 94 A.3d 1071, any error in the trial court not explicitly resolving this issue would not change the result and, as such, is harmless.

Finally, we turn to the issue of prejudgment interest on the jury's verdict, in whole or in part. The trial court concluded that it would have awarded prejudgment

23

interest at 6% on the entire $75,000 jury award had it not otherwise set aside the jury's verdict. As found by the trial court, the jury's award of attorneys' fees itself is beyond review because the Township failed to challenge the jury instructions on that issue. (Opinion and Order at 4.) The Township argues Laskey is not entitled to prejudgment interest as of right because there was no "liquidated or ascertainable amount" awarded. (The Township's Br. at 19.) In contrast, Laskey argues the trial court's award of prejudgment interest on the entire verdict was valid.

Appellate review of an award of prejudgment interest is for an abuse of discretion. *Cresci Constr.*, 64 A.3d at 258. The award of prejudgment interest can be one as of right or one at the discretion of the trial court. *Id.* at 258-59. Where a "breach consists of a failure . . . to render a performance with **fixed** or **ascertainable monetary value**, interest **is** recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled." *Id.* at 259 (quoting Restatement (Second) of Contracts § 354(1) (Am. Law. Inst. 1981) (Restatement)) (emphasis added). Thus, if "the value [is] ascertainable or settled, i.e., liquidated, **in** the contract," "[r]**ecovery of prejudgment interest** under this standard **is a matter of law**, not of discretion." *Id.* (emphasis added). Here, the 2011 Release clearly sets an ascertainable and fixed "value" on the performance to be rendered by the Township at $50,000. This is contrary to the Township's claims that there was no "liquidated" or "ascertainable" amount upon which interest could be awarded. Accordingly, the trial court's award of prejudgment interest on the $50,000 is as of right. *Id.* at 260.

"In any other case, such interest may be allowed as justice requires on the amount that would have been just compensation had it been paid when performance was due." *Id.* at 259 (quoting Restatement § 354(2)). This applies where the amount

24

is not ascertainable or settled in the contract, or the loss was incurred as a consequence of the breach, the grant of prejudgment interest on the damages is within the trial court's discretion. *Id.* at 260-62; *see also TruServ Corp. v. Morgan's Tool & Supply Co.*, 39 A.3d 253, 264-65 (Pa. 2012) (stating the award of prejudgment interest on losses incurred as a consequence of a breach is within the trial court's discretion.) Thus, the fact that the consequential damages award of attorneys' fees was not "ascertainable" did not preclude an award of prejudgment interest, as the Township briefly argues; rather, it means that such award was within the trial court's discretion.

Here, the trial court provided the Township an opportunity to address the issue of prejudgment interest and provide an alternative applicable interest rate, but the Township failed, without excuse, to present evidence on the issue. (Opinion and Order at 2.) Further, the trial court expressly limited the prejudgment interest to the last $25,000 accrued, which it assumed were the attorneys' fees the jury awarded. In doing so, the trial court limited the amount of prejudgment interest the Township would have to pay. As Laskey points out in his reply brief, the Township provides no argument beyond its claim that no amounts were liquidated. The Township does not explain how or why the trial court abused its discretion in awarding prejudgment interest on the $25,000 attorneys' fees award. Accordingly, the Court is left without a clear position or argument by the Township on this issue, and we will not address it further. *Beaver Valley Slag, Inc.*, 247 A.3d at 1221.

## V. CONCLUSION

For the foregoing reasons, the trial court erred in setting aside the jury's verdict in this matter and denying Laskey's Post-Trial Motion for prejudgment

25

interest on that basis. Accordingly, the trial court's Order is reversed, and this matter is remanded for a calculation of the prejudgment interest on the full verdict.

_____

**RENÉE COHN JUBELIRER,** President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Natalie R. Laskey, Executrix of the           :     CASES CONSOLIDATED
Estate of Stephen Robert Laskey,              :
                    Appellant                  :
                                               :
           v.                                  :     No.  919 C.D. 2021
                                               :
North Union Township, a second class          :
municipality of the Commonwealth of           :
Pennsylvania                                   :
                                               :
Natalie R. Laskey, Executrix of the           :
Estate of Stephen Robert Laskey               :
                                               :
           v.                                  :     No.  987 C.D. 2021
                                               :
North Union Township, a second class          :
municipality of the Commonwealth of           :
Pennsylvania,                                  :
                    Appellant                  :

## O R D E R

**NOW**, May 16, 2024, the Order of the Court of Common Pleas of Fayette County, entered in the above-captioned matters, is **REVERSED**, and these matters are **REMANDED** for further proceedings in accordance with the foregoing opinion.

Jurisdiction relinquished.

_____
**RENÉE COHN JUBELIRER,** President Judge